HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROXIE JONES,

        Plaintiff,

     v.

STEPHEN SINCLAIR, et al.,

        Defendants.

CASE NO. C14-1241RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the Report and Recommendation ("R&R") of United States Magistrate Judge Mary Alice Theiler as well as the parties' objections to the R&R.  For the reasons stated below, the court ADOPTS the R&R (Dkt. # 24) in many respects, but reaches a different conclusion as to Plaintiff's claim invoking the First Amendment.  The clerk shall TERMINATE both parties' objections (Dkt. ## 25, 26) and RE-REFER this matter to Judge Theiler for such additional proceedings (if any) as are necessary to ready Plaintiff's remaining claim for trial.  Part III of this order contains individual dispositions of Plaintiff's claims.

## II.  DISCUSSION

**A.** **The Court First Considered This Suit as a Challenge to a Policy Permitting the Seizure of Newly-Defined "Sexually Explicit Materials."**

On August 12, 2014, when Plaintiff Roxie Jones filed this suit against Washington Department of Corrections ("DOC") officials in charge of the Washington prison where he is incarcerated, just three days remained before Defendants were to implement a new

ORDER – 1

policy regarding "sexually explicit materials." What prompted the suit was, apparently, Defendants' posting of a new policy on a wall within the prison. Pltf.'s Opp'n (Dkt. # 23) at 1 (describing policy changes posted on prison walls). No one has provided that policy to the court, but Defendants do not contest the version that Mr. Jones transcribed in his motion for injunctive relief. Pltf.'s Mot. (Dkt. # 5) at 2-3. That policy announced changes to DOC Policy 405.100. It stated that Policy 405.100 would change effective August 15, 2014. It stated that "[a]lthough there are several changes to this policy, there is one notable change which will require action before the policy's implementation date." It explained that the definition of "sexually explicit materials" in Washington Administrative Code ("WAC") § 137-48-020(13) had changed and stated as follows:

> Effective August 15, 2014, any offender property not in compliance with the revised policy will be considered contraband and confiscated. This includes publications, correspondence, and photographs.

> Therefore, before the policy takes effect, any offender property not meeting the revised policy must be removed.

> The [DOC] recognizes the financial hardship this may place on offenders. Until August 14, 2014, offenders will be allowed to mail out the identified property at DOC expense to any address within the continental United States . . . .

> Beginning August 15, 2014, any offender property not in compliance with the revised policy will be subject to confiscation and handled as contraband. Offenders may be subject to an infraction . . . .

Pltf.'s Mot. (Dkt. # 5) at 2-3. The court refers to this policy, specifically as it pertains to the seizure of "sexually explicit materials" from prisoners, as the "Contraband Policy."

Mr. Jones explained how the Contraband Policy would impact him. He noted that the "postage paid to send this material out only covers the United States," and asked: "What about offenders like me that either have no one in the United States to send property to, and/or have no one at all to send property to[?]"[1] Pltf.'s Mot. (Dkt. #5) at 4.

---

[1] Mr. Jones is proceeding without the assistance of an attorney and using only prison resources to prepare his pleadings. Except where clarity demands, the court's quotations of those pleadings correct his spelling errors, punctuation, and irregular capitalization.

ORDER – 2

1    He asked, at the very least, that the court "order that this policy should not be retroactive,

2    and offender existing property should be grandfathered in." *Id.*

3          What confronted the court in August 2014 was a suit in which a prisoner alleged

4    that he had property that was potentially subject to the new definition of "sexually

5    explicit material," and that he feared that he would be disciplined and his property seized

6    absent the intervention of the court.  Because Mr. Jones did not sue and file his motion

7    for injunctive relief until just two days remained before the implementation of the

8    Contraband Policy, the court entered a limited restraining order requiring Defendants, to

9    the extent they seized anything from Mr. Jones because of the Contraband Policy, to hold

10   it for safekeeping and not to discipline him pending assessment of the merits of this case.

**B.      Proceedings Since August 2014 Have Focused on a Policy for Screening
          Incoming or Outgoing Mail Containing "Sexually Explicit Materials."**

12         Since the court entered its limited restraining order, this case has evolved to

13   encompass something other than a challenge to the Contraband Policy.  In Defendants'

14   response to Mr. Jones's request for injunctive relief and their own motion for summary

15   judgment, as well as Mr. Jones's responses, the parties began to devote much (but not all)

16   of their attention to DOC Policy 405.100.  Unlike the Contraband Policy, which permits

17   DOC officials to seize material from prisoners' cells, Policy 405.100 is only about

18   incoming and outgoing prisoner mail.[2]  Both the Contraband Policy and other portions of

19   Mr. Jones's complaint and motion for injunctive relief at least mentioned Policy 405.100,

20   but there was nothing in those initial documents describing an injury Mr. Jones faced as a

21   result of that policy.  Policy 405.100 explains the DOC's procedures for screening

22   incoming and outgoing mail to and from prisoners, procedures for sending and receiving

23   legal mail, as well procedures for rejecting incoming or outgoing mail, notifying

24   prisoners, and giving them an opportunity to contest the rejection.  Policy 405.100

---

[2] Defendants attached a copy of Policy 405.100 to their answer.  Dkt. # 16, Ex. A.  The Policy
declares that it was revised as of August 15, 2014, and states that it includes "[m]ajor changes."
The court has no idea how this version of the Policy differs from its predecessors.

ORDER – 3

incorporates a 39-item list of reasons that the DOC may declare mail to or from prisoners to be "Unauthorized Mail" and thus refuse to send or deliver it. Prison officials can reject mail because it contains escape plans, because it has been "treated with perfume, glitter, and/or other items that could be easily misidentified," because it is written in "multiple languages," because it threatens harm to others, because it contains cash or checks, because it contains "copyrighted material," because it contains a "blank greeting card or postcard," or for a host of other reasons. In addition, like Contraband Policy, Policy 405.100 incorporates the definition of "sexually explicit materials" from WAC § 137-48-020. It incorporates that definition into a clause that declares sexually explicit material within the scope of that regulation to be "unauthorized mail." WAC § 137-48-020(13) defines "sexually explicit materials" as follows:

> "Sexually explicit materials" consist of any item displaying, portraying, depicting, or describing:
>
> (a)   Nudity, which includes exposed/visible (in whole or part, including under or through translucent/thin materials providing intimate physical detail) genitals/genitalia, anus, and/or female/transgender breast nipple(s);
>
> (b)   A sex act(s) which includes, but is not limited to, genital-genital, oral-genital, anal-genital, or oral-anal contact/penetration, genital or anal contact/penetration with an inanimate object, masturbation, sadistic/masochistic abuse, bondage, bestiality, and/or bodily excretory behavior which appears to be sexual in nature;
>
> (c)   A participant(s) who appears to be nonconsenting, dominated, degraded, humiliated, or in a submissive role, and/or acting in a forceful, threatening, dominating, or violent manner which appears to be sexual in nature; and/or
>
> (d)   Minor(s), or models depicting minors, in a sexually suggestive setting/pose/attire.

That definition was part of amendments to WAC § 137-48-020 that became effective in May 2013, more than a year before Mr. Jones sued. The previous version of the definition used substantially different language. Mr. Jones believes the new version is much more restrictive; Defendants do not dispute that belief. The court could parse the

ORDER – 4

language to attempt to determine the substantive difference between the new version and the old. But, as the court will now discuss, there is no need to do so at this time.

**C.      There is No Evidence that Mr. Jones Has Standing to Challenge the Prison Mail Policy's Definition of "Sexually Explicit Materials."**

On the record before the court, Mr. Jones has no standing to challenge DOC Policy 405.100. The court has reviewed the record carefully. There is nothing in that record that would permit the court, even straining to give Mr. Jones the benefit of every possible inference, to conclude that Mr. Jones is in any way impacted by DOC Policy 405.100. Mr. Jones does not allege (much less provide evidence) that he has sent mail that has been rejected because it contains sexually explicit material; he does not allege (much less provide evidence) that he wishes to send mail but has not done so because he fears it will be rejected because it contains sexually explicit material; he does not allege (much less provide evidence) that mail sent to him has been rejected because it contains sexually explicit material; and he does not allege (much less provide evidence) that anyone wishes to send him mail containing sexually explicit material but has not done so because of fears that the mail will be rejected. Instead, Mr. Jones offers hypothetical examples of mail he fears would be rejected under DOC Policy 405.100, and an example of another offender whose mail was rejected for reasons having nothing to do with the definition of "sexually explicit materials." Those examples provide the fodder for an interesting discussion of Policy 405.100; they provide no basis for a lawsuit. Article III of the United States Constitution, which limits the court's subject matter jurisdiction, confers standing on a plaintiff only when (among other things) the plaintiff has suffered an injury-in-fact. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (requiring an injury that is "concrete, particularized, and actual or imminent").

That Mr. Jones has no injury-in-fact stemming from DOC Policy 405.100 is a sufficient basis to dismiss every cause of action based on that policy. The R&R reviews each of those causes of action, which include not only Mr. Jones's First Amendment free-

ORDER – 5

speech challenge, but contentions that DOC Policy 405.100 violates the Eighth
Amendment's prohibition on cruel and unusual punishment, that it violates the Due
Process Clause and Equal Protection Clause of the Fourteenth Amendment, and that it
impinges on his religious liberty.  As the R&R explains, most of those causes of action
would be meritless even if there were evidence that Mr. Jones were impacted by DOC
Policy 405.100.  But the court cannot reach the merits of any of those causes of action
because they are beyond the scope of the judicial power that Article III confers.  That is
true even of Mr. Jones's assertions that the Policy 405.100 violates the First Amendment
because it is overbroad as to the definition of "sexually explicit materials."  As the R&R
explains, those assertions could permit Mr. Jones to challenge Policy 405.100 even if the
sexually explicit material that he wished to send or receive in the mail would be within
the scope of a policy that was not overbroad.  *See Comite de Jornaleros v. City of
Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (noting that courts permit overbreadth
challenge without requiring plaintiff to prove that his own conduct was beyond the scope
of a narrowly drafted statute).  But invocation of the overbreadth doctrine does not
change a plaintiff's obligation to provide evidence of an injury-in-fact.  *4805 Convoy,
Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir. 1999).

**D.      Mr. Jones Has Standing to Challenge the Contraband Policy and Its
          Definition of "Sexually Explicit Materials."**

Although the parties devote much more attention to Policy 405.100 than the
Contraband Policy, the latter policy is the only one properly before the court.  Policy
405.100 is about mail; it is wholly silent as to the seizure of sexually explicit material
from prisoners' cells.  The Contraband Policy, on the other hand, apparently permits the
DOC to seize from prisoners' cells sexually explicit material and to subject them to
discipline for possession of that material.  It is possible, given the structure of the
Contraband Policy, that Defendants believe that prisoners have property in their cells that

ORDER – 6

was not "sexually explicit material" under the version of WAC § 137-48-020 in effect

before May 2013, but became "sexually explicit material" when that regulation changed.

Mr. Jones complained of a threatened injury from the Contraband Policy when he

filed his motion for injunctive relief in August 2014, because he claimed that he had no

one to whom to send his "sexually explicit" contraband.  That threatened injury was the

basis of the court's limited restraining order.  Now, in connection with the motions before

the court, he claims actual injury:

> Plaintiff's cell has been searched three times since filing this complaint, . . .
> a number of pictures were removed under the new policies, and [P]laintiff
> was given a major infraction that would have created a liberty interest if it
> had not been for this court's earlier Order.  At the hearing, Plaintiff made
> the committee aware of the Court order and it was dismissed.

Pltf.'s Opp'n (Dkt. # 20) at 5.

> Now that the [Contraband Policy] has been activated, the plaintiff and
> others complained, have suffered harm from loss or property and
> punishment handed down from such.  Although now, Defendants have told
> staff to take everything that is now contraband per [the] new policies, but
> have told them not to write any infractions until this lawsuit is over.

Pltf.'s Opp'n (Dkt. # 23) at 10.  Less specific versions of these allegations appear

elsewhere in Plaintiff's briefs.  *See*, *e.g.*, Pltf.'s Opp'n (Dkt. # 23) at 2 ("Since filing of

the complaint . . . , the [Contraband Policy] has gone into effect, and the Plaintiff and

other inmates have in fact lost property (damages) per the changes to the (WAC) changes

as predicted and attempted to prevent by this complaint . . . ."), Pltf.'s Opp'n (Dkt. # 20)

at 6 ("[U]ntil the law suit is settled, [Defendants] are only tak[ing] the pictures and what

else is now considered contraband, without issuing infractions (punishments) for such

items.  But without an injunction in place, they could and would change that . . . .").

Defendants have not acknowledged Mr. Jones's evidence that he has suffered

injury as a result of the Contraband Policy.  They do not acknowledge that Mr. Jones

contends that property has been seized from him as a result of the Contraband Policy.

Attempting to convince this court to disregard Judge Theiler's recommendation to deny

ORDER – 7

their summary judgment motion only as to Mr. Jones's First Amendment claim, they contend that Mr. Jones has provided no evidence of injury.  The court concludes otherwise, treating Mr. Jones's allegations about the searches and seizures from his cell as "evidence."  In contrast to his allegations about matters about which he has no personal knowledge, his averments about what happened to him can be considered competent evidence.  Mr. Jones did not place those averments in a separately-filed declaration that he signed under penalty of perjury, which is what a lawyer would have done.  But he closed each of the briefs he filed with a statement that he affirmed his factual averments under penalty of perjury.  The court treats these averments as evidence, in line with its obligation to construe pro se pleadings liberally.

Mr. Jones's evidence of injury resulting from the Contraband Policy leaves much to be desired.  It lacks many details.  The court does not know when Defendants searched his cell, when they seized property, what property they seized, whether Defendants seized that property because it was "sexually explicit material," when the "hearing" that Mr. Jones referred to took place, whether it was a grievance hearing, whether there is any written record of a grievance or a hearing.[3]  But Defendants raise none of those objections, declining to address the only actual injury that Mr. Jones has described—an actual injury resulting from the Contraband Policy.

### III.  DISPOSITION

For the reasons discussed above, the court orders as follows:

1) The court adopts the R&R to the extent it recommends that the court grant summary judgment against claims except Mr. Jones's First Amendment free-speech claim.  The court does so because it concludes that Defendants' motion

---

[3] The R&R concludes that Mr. Jones was not obligated to exhaust the prison's grievance system before bringing this suit.  The R&R did so, however, without acknowledging that Mr. Jones's obligation to use that system might vary depending on whether he was challenging the Contraband Policy or DOC Policy 405.100.  It also did not acknowledge Mr. Jones's suggestion that he had some variety of "hearing" on a dispute over the seizure of his property via the Contraband Policy.

ORDER – 8

for summary judgment addressed only Mr. Jones's claims based on DOC Policy 405.100, and the court concludes that Mr. Jones has no Article III standing to bring those claims.

2) The court declines to adopt the R&R to the extent it suggests Mr. Jones has raised a viable First Amendment free-speech challenge to DOC Policy 405.100, because the court concludes that Mr. Jones has no Article III standing to bring that claim. For that reason, the court grants Defendants' motion for summary judgment against that claim.

3) The court rules that Mr. Jones has failed to provide sufficient evidence, allegation, or argument, to invoke the Eight Amendment, the Free Exercise Clause of the First Amendment, the Equal Protection Clause or Due Process Clause of the Fourteenth Amendment, or the Religious Land Use and Institutionalized Persons Act in a challenge to the Contraband Policy. The court dismisses those claims

4) The court declines to dismiss Mr. Jones's First Amendment free-speech challenge to the Contraband Policy. That claim is the sole claim remaining in this suit.

5) The court adopts the R&R's recommendation that the court not grant a preliminary injunction broader than the temporary restraining order it entered in August 2014. That temporary restraining order will remain in place unless the court orders otherwise.

6) The court adopts the R&R's recommendation that the court not appoint counsel for Mr. Jones at this time. The court makes that ruling without prejudice to Mr. Jones renewing his request for counsel in the event that he provides better evidence to support his First Amendment challenge to the Contraband Policy.

ORDER – 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7) The court adopts the R&R as to its denials of both Defendants' motion to strike one of Mr. Jones's opposition briefs as untimely and Mr. Jones's motion to strike a declaration from a DOC official regarding DOC grievance policies. As to the latter challenge, the court notes that Mr. Jones's sole objection was that the official revealed the offenses for which Mr. Jones is currently incarcerated as well as offenses for which he had been incarcerated in the past. Those revelations made no difference in the court's decision today.

8) The court refers this matter to Judge Theiler for additional pretrial proceedings consistent with this District's reference of certain prisoner cases to its magistrate judges. *See* Amended Gen. Ord. No. 01-15 (Jan. 15, 2015) ¶ 3.[4] Judge Theiler may conduct such additional pretrial proceedings as she deems necessary. She may, among other things, conduct additional proceedings to determine if Mr. Jones's challenge to the Contraband Policy is triable. Alternatively, she may rule that no additional pretrial proceedings are necessary.

## IV.  CONCLUSION

For the reasons stated above, the court ADOPTS the R&R (Dkt. # 24) to the extent stated in Part III of this order. The clerk shall TERMINATE both parties' objections (Dkt. ## 25, 26) and RE-REFER this matter to Judge Theiler for additional proceedings consistent with this order.

Dated this 18th day of May, 2015.

*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Court Judge

_____
[4] The general order is available online at *http://www.wawd.uscourts.gov/sites/wawd/files/01-15-15AmendedGOinreConsentsandReferralsUSMagistrateJudges.pdf.*

ORDER – 10